**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 16-cv-2395

JOSE ARMENDARIZ-ARMENDARIZ, and SANDRA VALLES-RODRIGUEZ,

        Plaintiffs,

v.

ADAMS COUNTY, COLORADO, a government entity; BRIGITTE GRIMM, in her official capacity as Treasurer for the County of Adams, State of Colorado; MICHAEL MCINTOSH, in his official capacity as Sheriff for the County of Adams, State of Colorado; TIP TOP HOMES INC., a Colorado corporation; and NORTH COUNTY VILLAGE ASSOCIATES, LLC, a Colorado limited liability company d/b/a NORTH COUNTY VILLAGE,

        Defendants.

---

# COMPLAINT

---

## INTRODUCTION

1.    This action concerns the taking of Plaintiffs Jose Armendariz-Armendariz and Sandra Valles-Rodriguez's ("**Plaintiffs**") home for $63.74 in unpaid taxes.  In February of 2014, Plaintiffs purchased a single-wide mobile home from North County Village Associates, LLC, a mobile home park (the "**Park**").  They paid over $9,000.00 for their home, including $63.74 for taxes for 2013.  The Park failed to pay those taxes to Adams County.  For the next several months, Mr. Armendariz and his son spent four hours a day renovating the home to make the home livable for Plaintiffs and their three children.  Then, without due process and without just compensation, Brigitte Grimm, as Treasurer for the County of Adams, State of Colorado (the "**Treasurer**") sold the Plaintiffs' home to Tip Top Homes, Inc. ("**Tip Top**") for

$63.74 in unpaid taxes through a tax lien sale.  Under threat of eviction, the Plaintiffs signed a contract with Tip Top to rent and repurchase the home for significantly more than the $63.74.

## NATURE OF THE ACTION

2.      The Denver metropolitan area is currently experiencing a booming housing market coupled with a growing crises in affordable housing.  Low inventory has caused prices to soar and deplete the availability of affordable housing.  Low numbers of homes in foreclosure have caused distressed real estate investors to turn to other avenues to make a profit.  One of these avenues is purchasing tax liens.

3.      In Colorado, "[t]axes levied on real and personal property, together with any delinquent interest, advertising costs, and fees prescribed by law with respect to any such taxes as may have become delinquent, shall be a perpetual lien thereon, and such lien shall have priority over all other liens until such taxes, delinquent interest, advertising costs, and fees shall have been paid in full."  Colo. Rev. Stat. § 39-1-107.

4.      When the owner of real property fails to pay property taxes, the county in which such property is located may then sell the tax lien at auction to the highest bidder.  At a minimum, the bidder must pay the taxes, delinquent interest, and fees of sale.  Colo. Rev. Stat. § 39-11-115(1).

5.      The treasurer then issues a certificate of purchase to the successful bidder at auction.  Colo. Rev. Stat. § 39-11-117.  This certificate entitles the holder to receive the taxes owed, delinquent interest, fees of sale, and interest on these amounts from the real property owner.

6.      If, within three years after the sale, the real property owner fails to pay to the certificate holder the taxes owed, delinquent interest, fees of sale, and interest, the certificate holder may then apply to the county treasurer for a deed to the real property.  This deed

conveys an absolute interest in fee simple to the certificate holder, free and clear of all junior liens.  The deed extinguishes all rights to ownership by the real property owner, including any homestead exemption.

7.      By contrast, the tax lien on personal property is not auctioned at sale.  Instead, if a personal property owner fails to pay property taxes, the county may seize the personal property through a distraint warrant.  "At any time after the first day of October, the treasurer shall enforce collection of delinquent taxes on personal property by commencing a court action for collection or employing a collection agency as provided in section 39-10-112 or by distraining, seizing, and selling the property."  Colo. Rev. Stat. § 39-10-111(1)(a).

8.      After a distraint warrant is issued, and the sheriff seizes the personal property at issue by serving the distraint warrant, the treasurer may then sell the personal property at an auction.  The minimum price at the auction is the taxes, delinquent interest, and costs of making the seizure and advertising the sale.  Colo. Rev. Stat. § 39-10-111(5).  Aside from the relationship between the amount of taxes owed and the value of the personal property, the minimum price bears no relationship to the value of the personal property sold, and does not consider the owner's equity in the property or any exemptions.  If the auction does not fetch the minimum price, the county is declared the owner.

9.      The treasurer then issues a certificate of sale to the successful bidder at the auction.  Colo. Rev. Stat. § 39-10-111(7).  The certificate of sale is "prima facie evidence of the right of the treasurer to make such sale and conclusive evidence of the regularity of the proceedings in conducting and making such sale."  Id.  If the personal property is other than a mobile home, the owner has no right to redeem the property

10.     Colorado law allows redemption for mobile homes.  Redemption is the right of the owner to pay the taxes and amounts due to the county to prevent title from vesting in the purchaser at auction.  In the case of a mobile home located on land owned by the mobile

home owner, the owner has three years to redeem the mobile home and prevent title to the mobile home from transferring to the purchaser at auction.  By contrast, if the mobile home owner locates his or her home on rented land, the owner has only one year to redeem.  Colo. Rev. Stat. § 39-10-111(10).

11.     Once the redemption period expires, title passes to the successful bidder at auction, and the owner has no right to any equity in the home.  Under this law, no matter how small the tax bill, no matter how much equity the owner has in the home, and ignoring the owner's right to a homestead exemption, Colorado law takes title and any equity from the owner and transfers it automatically to the purchaser at auction.  Neither the State nor the purchaser has any obligation to reimburse the owner for any of the equity in the home. Instead, the purchaser receives both the home and the equity.

12.     From the earliest years of this nation's Constitution, it has been recognized that "It is against all reason and justice to presume that the legislature has been entrusted with the power to enact a law that takes property from A and gives it to B."  Calder v. Bull, 3 U.S. 386 (1798) (Chase, J.).  This guiding principle has been recognized repeatedly as a core tenet of the Fifth Amendment of the U.S. Constitution and as a shield against the arbitrary abuse of government power.

13.     The Fifth Amendment of the United States Constitution limits the power of the government to take property by prohibiting such a taking in the absence of a public purpose. When the government does take property for a public purpose, such as when a highway is built, the government takes title to the property and pays compensation to the property owner.  Where there is no public purpose, the Fifth Amendment prohibits such a taking.  For example, it would be unthinkable under the Fifth Amendment for the government to distrain and seize a property, and then take the remaining balance of equity in the property for itself after the taxes, interest and expenses are paid.

14.     Colorado law commits the unthinkable and even worse.  The Treasurer takes the property of homeowners and then transfers title to that property not to the government, but to a private party (buyers of auctions) seeking profits from sales.  Upon sale, the private party receives all equity in the property even after the tax lien has been fully satisfied.

15.     The Fourteenth Amendment of the United States Constitution denies the States the power to deprive a person of life, liberty, or property without due process of law. "That a man is entitled to some notice before he can be deprived of his liberty or property, is an axiom of the law to which no citation of authority would give additional weight . . . ." Roller v. Holly, 176 U.S. 398, 409 (1900).

16.     Colorado law prescribes the type and manner of notice, but the Treasurer does not meet these minimum standards.  To meet the minimum standard to distrain a person's mobile home, Colorado law requires that the sheriff serve a distraint warrant upon the person whose property is being seized.  Colo. Rev. Stat. § 39-10-111(1)(a).

17.     Michael McIntosh, in his official capacity as Sheriff for the County of Adams, State of Colorado (the "**Sheriff**"), is the official responsible for serving distraint warrants in Adams County.

18.     As a matter of practice, the Sheriff does not "serve" this notice.  Instead, the Sheriff merely posts the distraint warrant upon the property being seized.  In Plaintiffs' case, the distraint warrant was not posted on their Home at all.  Instead, the Sheriff posted the distraint warrant on the wrong property altogether.

19.     Moreover, the Fourteenth Amendment prohibits the States from denying equal protection of the laws to any person.  When a statute impinges upon a fundamental right – such as the right to own property – "it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification has been precisely

tailored to serve a compelling governmental interest."  Plyler v. Doe, 457 U.S. 202, 217 (1982).

20.     There is nothing compelling about denying a home owner a three-year redemption period simply because the home is a mobile home and is located on leased land. But the statute does exactly that.  Even though the Treasurer's remedy for collecting unpaid taxes on a mobile home located on owned land versus leased land is identical – taking the mobile home and not the land – the statute shortens the redemption period for mobile homes located on leased land.

21.     The victims of these abuses of government power at issue in this case are among our most vulnerable citizens.  Often it is low-income citizens who are unable to pay real property taxes and who are preyed upon by purchasers of tax certificates.  Citizens who not only fail to pay a property tax bill, but face a sale due to a limited tax bill –  despite equity in their homes – are ordinarily those who are incapable of managing their affairs and exercising legal rights.   These citizens face the risk of losing their homes over relatively small amounts in unpaid property taxes.  Many dozens and perhaps more such homeowners have lost their homes due to Colorado's unconstitutional law.

## JURISDICTION

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

23.     The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside in this District; a substantial part of the events or omissions giving rise

to the claim occurred in this District; and a substantial part of property that is the subject of the action is situated in this District.

**PARTIES**

25.     Each Plaintiff is an individual and resides in the County of Adams, State of Colorado.

26.     Defendant Adams County, Colorado ("**Adams County**") is a political subdivision of the State of Colorado and is the public entity responsible for Adams County and the recipient and beneficiary of personal property taxes.

27.     At all times relevant to the subject matter of this litigation, the Treasurer was a citizen of the United States and a resident of Colorado.  At all relevant times, the Treasurer was acting under color of State law in his capacity as the Adams County Treasurer.  The Treasurer was responsible for training and supervising all individuals and employees of the Office of the Treasurer, for setting policies for the service of distraint warrants, for collecting unpaid personal property taxes, and for conducting the sale of personal property to satisfy personal property tax obligations.

28.     At all times relevant to the subject matter of this litigation, the Sheriff was a citizen of the United States and a resident of Colorado.  At all relevant times, the Sheriff was acting under color of State law in his capacity as the Adams County Sheriff.  The Treasurer was responsible for training and supervising all individuals and employees of the Office of the Sheriff and for setting policies for the service of distraint warrants.

29.     Tip Top is a Colorado corporation with a primary place of business at 10201 Riverdale Road, Thornton, Colorado 80229.

30.     The Park is a Colorado limited liability company with a primary place of business at 3180 East 88th Avenue, #111, Thornton, Colorado 80229.

## **FACTS**

31.     On or about January 17, 2014, the Park offered (the "**Offer**") to sell the mobile home known by Vin# CHC01764 (the "**Home**") to Plaintiffs for consideration of $8,000.00, plus February rent of $569.00; February trash fees of $16.55, title transfer fees of $50.00; utility deposit of $100.00; processing fee of $250.00; and county taxes of $63.74, for total consideration of $9,065.84.

32.     The taxes of $63.74 represented the taxes due and payable for FY2013, when the Park owned the Home.

33.     Plaintiffs agreed to place a deposit of $1,000.00 to purchase the Home, which Plaintiffs duly delivered to the Park in the form of two money orders for $500.00 each.

34.     In the Offer, Plaintiffs were required to pay the balance of $7,000.00

35.     On or about February 11, 2014, Plaintiffs entered into a "Used Mobilehome [sic] Sales Contract" to purchase the Home.

36.     The price to be paid for the Home was $8,000.00, as described in the offer.

37.     On or about February 10, 2014, Plaintiffs delivered a cashier's check in the amount of $8,065.84 to the Park.

38.     The Park did not pay the $63.74 in taxes to the Treasurer.

39.     Contrary to the Park's actual knowledge of the exact amount of taxes due and owing to the Treasurer, and the Park's receipt of those taxes due and payable to the Treasurer, the Park represented to Plaintiffs that it had no knowledge of the taxes due and payable to the Treasurer.

40.     Although the Park charged $63.74 for the taxes due for 2013, $50.00 for a title transfer fee, and $250.00 for a processing fee, the Park did not notify the County or State of Colorado Department of Revenue that title to the Home had transferred to Plaintiffs.

41.     Accordingly, the Park continued to receive the notices of taxes due.  Prior to moving into the Home, Plaintiffs spent many hours improving the home to make it livable for their family.  They installed new windows, new vinyl floors, new cabinets, new electrical, new toilets, new sinks, new decking, new tile, and new doors.  They painted, added trim around outside and inside windows, and removed walls to make a lovely home for themselves and their family.

42.     On or about September 24, 2014, a deputy sheriff allegedly served a "Distraint Warrant" to Plaintiffs for $63.74 in taxes due, plus $3.82 in interest, and service fees of $35.00, for $102.56 total.

43.     The Distraint Warrant was not personally served to Plaintiffs or posted on the Home.

44.     The Distraint Warrant was posted at space 0403 at the park.

45.     Plaintiffs' Home is not located at space 0403 – Plaintiffs' home is located at space 197.

46.     Plaintiffs did not receive the Distraint Warrant.

47.     On November 3, 2014, the Treasurer conducted a public auction at which the Treasurer purported to sell, and Tip Top purported to purchase, the Home.

48.     On June 12, 2015, the Treasurer sent a letter to the Park notifying the Park that the redemption period for paying past due taxes was running.  Park did not give deliver this notice to Plaintiffs.

49.     On November 24, 2015, over a year after the purported tax sale, Tip Top applied for and received a "Certificate of Purchase" evidencing its purchase of the Home.

50.     The holder of the Certificate of Purchase is entitled to interest in the amount of ten percent (10%) per annum on the amount of taxes, interest, and fees due to compensate the holder for paying those amounts

51.     On December 3, 2015, Tip Top surrendered the Certificate of Purchase to the Treasurer in exchange for a "Certificate of Ownership" of the Home.

52.     On information and belief, Tip Top waited over a year from the time of the auction to apply for the Certificate of Purchase to ensure that Plaintiffs would have no knowledge of the sale, and to become the owner of the Home.

53.     In other words, Tip Top was not satisfied with a ten percent return on its investment – Tip Top wanted the Plaintiffs' equity in the Home to realize a return of many tens of thousands of dollars and an astronomical percentage return on its investment.

54.     In June of 2016, Ms. Valles-Rodriguez contacted Tip Top to address Tip Top's claim of ownership.

55.     In late June 2016, Tip Top showed up at Plaintiffs home and demanded that they either pay a significant amount of money to Tip Top or be evicted from their Home.

56.     On June 24, 2016, Tip Top served a "Three Day Demand for Compliance or Right to Possession" on Plaintiffs.  The Three Day demand states that Plaintiffs must enter into a lease with Tip Top "for them to remain in the home."

57.     On or about June 30, 2016, Plaintiffs entered into a "Mobile Home Lease Agreement with Option to Purchase" with Tip Top (the "**Agreement**").

58.     But for the threat of physical eviction from the Home, and the need to relocate their family upon short notice, Plaintiffs would not have entered into the Agreement.

59.     The threat of eviction subjugated Plaintiffs' minds to the will of Tip Top.

60.     One of the fundamental assumptions of entering into the Agreement was that Tip Top owned the Property.

61.     Due to the Sheriff's failure to serve the Distraint Warrant, the tax lien sale was invalid and Tip Top did not obtain title to the Home.

**COUNT I**
**(42 U.S.C. § 1983 Claim for Damages for Violations of the Fifth Amendment of the United States Constitution)**
**(Against Treasurer and the County)**

62.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

63.     By directing takings of private property without a public use, Colo. Rev. Stat. § 39-11-101 et seq. violate the Fifth Amendment of the United States Constitution, made applicable to the States by the due process clause of the Fourteenth Amendment, Chicago, B & O R. Co. v. Chicago, 166 U.S. 226 (1897).

64.     Colo. Rev. Stat. § 39-11-101 et seq. direct the Treasurer to conduct public auction of "Certificates of Purchase" to private properties subject to property tax liens. Through these auction, the Treasurer sells the Certificates of Purchase to private purchasers. Those certificates of purchase then permit the purchasers to obtain "Certificates of Ownership", which then vest complete ownership in the property owner's homes after the owner's right of redemption expires.

65.     Colorado law therefore allows the Treasure to take and sell to a purchaser of a Certificate of Purchase the right to own private property, even if the original property owner owns equity in that property.  Regardless of how much equity a property owner invests in his or her property, or how minor the property tax obligation that the owner owes to the County, Colo. Rev. Stat. § 39-11-101 et seq. provide that the Treasurer will take and transfer the property and all the equity in it to another private purchaser.

66.     Equity in a home is undeniably a property right that may not be taken in violation of the Fifth Amendment of the Constitution.  Equity is a partial interest in personal property and is subject to distribution like other forms of property.  The government may not take a citizen's home equity in violation of the Constitution.

67.     Colo. Rev. Stat. § 39-11-101 et seq. therefor directs the taking public transfer of private property to other private purchasers.

68.     Moreover, the County has no public purpose for selling the right to ownership in private home equity when that equity is larger in amount that the tax liens, interest, costs, penalties, and other amounts at issue.  Colo. Rev. Stat. § 39-11-101 et seq. provides ample means for recovering the amounts of these taxes, such as filing a collection lawsuit, yet the provisions here also allow for the taking and transfer of amounts of equity that are above and beyond the amount of the public debt owed, thereby eviscerating any relationship between the public purpose for these sales (the recovery of property tax deficiencies), and the final amounts transferred to the purchasers.  The Constitution precludes such arbitrary exercises of government power.

69.     For the reasons state, Colo. Rev. Stat. § 39-11-101 et seq. violate the Fifth Amendment of the United States Constitution.

70.     Plaintiffs have been damaged by the loss of their home and the equity in the home.

## COUNT II
**(Claim for Just Compensation Under the Fifth Amendment of the United States Constitution)**
**(Against Treasurer and County)**

71.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

72.     Plaintiffs state their claim in Count II as an alternative claim to Count I.

73.     The Fifth Amendment provides, "nor shall private property be taken for public use, without just compensation."   This clause requires the government to provide just compensation for the taking of private property for a public use.

74.     Colo. Rev. Stat. § 39-11-101 et seq. permits a taking of private property, including the original owners' equity in the real property, without any form of compensation of the property.

75.     Such takings without compensation of any kind, even if they could be found to have a public purpose, violate the Fifth Amendment.  By permitting such seizures without requiring any compensation, Colo. Rev. Stat. § 39-11-101 et seq. authorizes an unconstitutional action.

76.     For the reasons stated, Colo. Rev. Stat. § 39-11-101 et seq. violate the "just compensation" requirements of the Fifth Amendment of the United States Constitution.

77.     The County has taken the Plaintiffs' property without paying just compensation.

78.     Plaintiffs have been damaged by the failure to pay just compensation for the loss of their Home and the equity in their home.

**COUNT III**
**(42 U.S.C. § 1983 Claim for Damages for Violations of the Due Process Clause of the Fourteen Amendment of the United States Constitution)**
**(Against Treasurer, County and Sheriff)**

79.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

80.     The Due Process Clause of the Fourteenth Amendment requires due process when a person may be deprived of life, liberty, or property.  The Due Process Clause shields from arbitrary or capricious deprivation action of government.  Procedural due process ensures that the state will not deprive a party of property without engaging fair procedures.

81.     Plaintiffs indisputably have a protected property interest in the ownership of their home.  The right to ownership of one's home is one of the most fundamental and sacrosanct property interests in law.  Alderman v. United States, 394 U.S. 165 (1967).

82.     The Constitutional minimum for procedural due process is "notice that is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).

83.     While the Constitution sets the minimum requirements for procedural due process, the States are free to establish procedures that meet this Constitutional minimum. And when a state establishes those procedures, the state's citizens are entitled to receive and rely upon those procedures.

84.     Colo. Rev. Stat. § 39-10-111(1)(a) requires that a distraint warrant be served upon the owner of the personal property to be seized to satisfy unpaid tax obligations prior to the seizure.

85.     The Sheriff is the public official responsible for serving distraint warrants for the seizure of personal property.

86.     The Sheriff did not serve a distraint warrant upon Plaintiffs or upon the property to be seized, the Home.

87.     The Sheriff served a distraint warrant either upon the wrong property, or did not serve the distraint warrant at all.

88.     After the Sheriff's failure to serve the distraint warrant in accordance with Colo. Rev. Stat. § 39-10-111(1), the Treasurer proceeded to sell the Home.

89.     As a result of the Sheriff's failure to serve the distrain warrant in accordance with Colo. Rev. Stat. § 39-10-111(1), the Plaintiffs were deprived of their property interest without due process of law.

90.     As a result of the Sheriff and Treasurer's unlawful seizure of Plaintiff's property without due process of law, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT IV
### (42 U.S.C. § 1983 Claim for Damages for Violations of the Equal Protection Clause of the Fourteen Amendment of the United States Constitution)
### (Against Treasurer and County)

91.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

92.     The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

93.     Colo. Rev. Stat. § 39-10-111(10), does not treat all persons similarly situated alike.  Under Colo. Rev. Stat. § 39-5-202, mobile homes are taxed as if they are real property but the taxes are collected as though they are personal property.  Whether the mobile home is located on real property owned by the mobile home owner or leased by the mobile home owner, the mobile home is taxed in the same manner.  If the mobile home owner fails to pay personal property taxes, the remedy is the same – the county where the mobile home is located may distrain and seize the mobile home to satisfy the personal property tax obligation.

94.     Even though the obligation to pay personal property tax and the remedy for failing to pay such tax are identical for mobile homes located on owned real property and leased real property, Colo. Rev. Stat. § 39-10-111(1) provides mobile home owners with homes located on owned real property with a three year redemption period.  By contrast, mobile home owners with homes located on leased real property have only a one year redemption period.

95.     As a result of this unequal treatment, mobile home owners with homes located on leased real property are subject to investors who prey upon them and use the short redemption period as a means to profit.

96.     As a result of the unequal protection afforded under Colo. Rev. Stat. § 39-10-111(10), Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT V**
**(28 U.S.C. § 2201 Claim for Declaratory Relief that Colo. Rev. Stat. § 39-10-111(10) Violates the Equal Protection Clause of the Fourteen Amendment of the United States Constitution)**
**(Against the Treasurer, County and Sheriff)**

97.     Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

98.     An actual and justiciable controversy exists as to whether Colo. Rev. Stat. § 39-10-111(10) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

99.     Plaintiffs are entitled to a declaration that the unequal redemption periods in Colo. Rev. Stat. § 39-10-111(10) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

100.     An actual and justiciable controversy exists as to whether the Treasurer and Sherriff violated the Due Process clause of the Fourteenth Amendment of the United States Constitution.

101.     Plaintiffs are entitled to a declaration that the Treasurer and Sheriff violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution by selling their Home without complying with Colo. Rev. Stat. § 39-10-111(10).

102.     An actual and justiciable controversy exists as to whether Colo. Rev. Stat. § 39-10-111(10) violates the Fifth Amendment to the United States Constitution.

103.     Plaintiffs are entitled to a declaration that the sale of their Home and all of its equity without compensation under Colo. Rev. Stat. § 39-10-111(10) violates the Fifth Amendment to the United States Constitution.

104.    Plaintiffs are entitled to a declaration that the sale of their Home in violation of the Fifth and Fourteenth Amendments to the United States Constitution is null and void.

### COUNT VI
### (Rescission of Contract)
### (Against Tip Top)

105.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

106.    Plaintiffs were subjugated to the will of Tip Top under the threat of eviction from their home.

107.    Plaintiffs would not have entered into the Agreement had they not been threatened with eviction under the short time frames permitted under Colorado law.

108.    At the time of entering the Agreement, both Plaintiffs and Tip Top believed that Tip Top had received valid title to the Home.

109.    Tip Top had not received valid title to the Home.

110.    Plaintiffs are entitled to rescind the Agreement under the doctrines of mutual mistake and duress.

### COUNT VI
### (Breach of Warranty)
### (Against the Park)

111.    Plaintiffs incorporate by reference all of the foregoing allegations as though fully set forth herein.

112.    The "Used Mobilehome [sic] Sales Contract" was a contract for the sale of goods governed by Article Two of the Colorado Uniform Commercial Code.

113.    Under Section 2-312 of the UCC, all sellers of goods warrant that the goods are sold free and clear of all liens and encumbrances of title.  Colo. Rev. Stat. § 4-3-312(1).

114.    The Park breached this warranty by failing to deliver title to the Home free and clear of the lien for taxes due and payable for FY2013.

115.    Plaintiffs have been damaged by the Park's breach in an amount to be determined at trial, including, but not limited to incidental and consequential damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jose Armendariz-Armendariz and Sandra Valles-Rodriguez pray for relief and judgment, as follows:

1.    The Court find and declare that the Treasurer's taking and sale of Plaintiffs' Home, including all the equity in their Home, violates the Fifth Amendment of the Constitution;

2.    The Court find and declare that the Treasurer's taking and sale of Plaintiffs' Home, including all the equity in their Home, without Due Process violates the Fourteenth Amendment of the Constitution;

3.    The Court find and declare that the Treasurer's taking and sale of Plaintiffs' Home, including all the equity in their Home, without giving Plaintiffs' a three year redemption period violates the Equal Protection Clause of the Fourteenth Amendment of the Constitution;

4.    The Court find and declare that the relevant portions of Colo. Rev. Stat. § 39-10-111 causing such sale to be null and void as an unconstitional violation of the Fifth and Fourteenth Amendments of the Constitution;

5.    Awarding Plaintiffs actual damages for violations of the Fifth and Fourteenth Amendments, including Plaintiffs' reasonable attorney fees and costs;

6.    Find and declare that the Agreement is void and rescinded and award to Plaintiffs' such damages as are just and equitable;

7.    Find and declare that the Park breached the warranty of title in the sale of the Home to Plaintiffs and award them damages; and

8.    Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiffs are entitled to and hereby demands a trial by jury.

Dated: September 23, 2016

Respectfully submitted,

/s/ Daniel J. Vedra
Daniel J. Vedra
Ahson B. Wali
Vedra Wali LLC
1435 Larimer St. Suite 302
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: daniel.vedra@vwfirm.com
       ahson.wali@vwfirm.com